[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 153 
The appellant, Jack Harrison Trawick, was convicted of murder made capital because the murder was committed during the course of a kidnapping. § 13A-5-40(a)(1), Code of Alabama 1975. The jury, by a vote of 10 to 2, recommended that the appellant be sentenced to death. The trial court accepted the jury's recommendation and sentenced the appellant to death by electrocution.
The state's evidence tended to show that on October 10, 1992, the partially nude body of Stephanie Gash* was found on the side of Grants Mill Road in Birmingham. Her mouth and nose were covered with duct tape. Dr. Joseph Embry, medical examiner for the state of Alabama, testified that she died as a result of a three-inch knife wound that entered her heart and as a result of asphyxiation caused by strangulation.
The appellant gave a detailed statement to the police in which he confessed to having murdered Stephanie Gash. He stated that he followed Gash from Eastwood Mall to her apartment. As Gash was walking from her parking space to her apartment, the appellant pulled up beside her in a van, pointed a toy gun at her, and ordered her to enter the van. As the appellant was pushing Gash into the van she hit her head on the side window of the van, and her glasses fell off. After she got in the van, the appellant tied the victim's hands with rope and put duct tape over her mouth. He drove to a secluded area where he beat Gash about the head with a hammer, strangled her, and stabbed her in the chest at an upward angle so that the knife would enter her heart. The appellant then disposed of the body by throwing it on the side of Grants Mill Road. The appellant confessed that he threw the contents of the victim's wallet out of the window as he was driving down Alton Road. He then cleaned the blood from the van at his house. The appellant's confession was corroborated by the following facts.
Police identified the body as a result of a missing persons report filed by the victim's mother on the morning the body was found. When Stephanie did not come home on the night of October 9, 1992, her mother, Mary Gash, telephoned her friends and tried to locate her. Rebecca Henderson, a friend of the victim's, came to the victim's apartment after talking with Stephanie's mother. Henderson found a pair of eye glasses, identified as belonging to the victim, lying on the ground by where she customarily parked her automobile. *Page 154 
Jeremy Burns testified that on October 10, 1992, he was walking with a friend down Alton Road, approximately three miles from where Gash's body was found, when he discovered a Texaco gasoline credit card with the name "Gash" on it. A search of this area resulted in the discovery of a college identification card issued to the victim and a health insurance card bearing the victim's name.
Gary Harris, an evidence technician for the Jefferson County Sheriff's Department, testified that he found a large brown-colored stain in the parking lot in front of the victim's apartment on October 22, 1992 after the appellant was questioned by police.
The appellant's Toyota van was towed to the police station on October 26, 1992. Police found in the van a piece of carpet, a tarpaulin, ball-peen hammer, and a plastic bucket that contained an 11-inch knife. Using luminol spray, police discovered blood traces on the tarpaulin, the piece of carpet, the ball-peen hammer, the tailgate of the van, and on the knife. A Ford station wagon which the appellant was known to drive was also impounded. A toy gun was found in the passenger's floorboard of that vehicle.
Steven Drexler, of the Alabama Department of Forensic Sciences, testified that two fibers found on the victim's sweater, which was recovered from the crime scene, were consistent with fibers from the carpet of the Toyota van. Also, fibers found on the duct tape that covered the victim's mouth were the same as the fibers from the carpet of the Toyota van.
 I
The appellant initially contends that evidence of his confession should have been suppressed. Specifically, he contends that his confession was not voluntary because, he says, he confessed only after he placed certain conditions on his agreement to confess that he was promised would be met. He asserts that he confessed only after he was promised that the case would be a capital case and there would be a minimum of publicity.
At the suppression hearing, Lieutenant Steven Greene, of the Jefferson County Sheriff's Department, testified that he took the appellant's statement on five occasions. In the fourth statement, which was introduced at trial, the appellant confessed to murdering Gash. Greene testified that before he made the statement the appellant was advised of hisMiranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694
(1966), rights, and that no threats or promises were made in order to get the appellant to make a statement. Greene further testified that he did not promise that he could or would meet the conditions set by the appellant.
The appellant himself testified at the suppression hearing that the officers did not promise that any "conditions" would be met before he made his statement.
All extrajudicial statements are deemed involuntary. If the statement is to be received as evidence, the state has the burden of proving, by a preponderance of the evidence, that the statement was voluntary and that the accused was advised of his Miranda rights. Colorado v. Connelly, 479 U.S. 157, 168,107 S.Ct. 515, 522, 93 L.Ed.2d 473 (1986). See also Coral v.State, 628 So.2d 954 (Ala.Cr.App. 1992); Jackson v. State,562 So.2d 1373 (Ala.Cr.App. 1990).
The appellant does not argue that he was not advised of his constitutional rights as articulated in Miranda. Thus, our inquiry centers on whether the appellant's statement was voluntary. To determine whether a statement is voluntary, this court must examine the "totality-of-the-circumstances." Bouldenv. Holman, 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433 (1969);Fikes v. Alabama, 352 U.S. 191, 77 S.Ct. 281, 1 L.Ed.2d 246
(1957).
Here, the appellant maintains that his giving the statement was conditioned on the granting of certain requests that he outlined to police. As the state contends, a similar issue was addressed by this court in Siebert v. State, 555 So.2d 772
(Ala.Cr.App.), aff'd, 555 So.2d 780 (Ala. 1989), cert. denied,497 U.S. 1032, 110 S.Ct. 3297, 111 L.Ed.2d 806 (1990). InSiebert, this court stated:
 "The appellant also argues that his statements should not have been allowed *Page 155 
into evidence because, he says, they were involuntary; specifically, he says they were conditioned on Captain Hurst's alleged promise that he would not be asked certain questions concerning 'details' of the murders. Captain Hurst, however, testified that appellant told him that he would admit to the killings, but would not go into any details until he got back to Alabama, a condition to which Captain Hurst agreed. Appellant now claims that Captain Hurst's agreement to this condition constituted a 'promise' or inducement for his statement, thereby rendering his statements involuntary and inadmissible.
 "The question of undue influence in obtaining admissions or confessions is determined by an examination of all attendant circumstances, with the inquiry focusing on whether the accused's free will and rational intellect were overborne at the time of his confession. Hubbard v. State, 500 So.2d 1204, 1220 (Ala.Cr.App.), aff'd, 500 So.2d 1231 (Ala. 1986), cert. denied, 480 U.S. 940, 107 S.Ct. 1591, 94 L.Ed.2d 780 (1987); McCammon v. State, 499 So.2d 811, 815 (Ala.Cr.App. 1986); Seawright v. State, 479 So.2d 1362, 1367
(Ala.Cr.App. 1985); Agee v. State, 465 So.2d 1196, 1198 (Ala.Cr.App. 1984). 'The factual inquiry centers on (1) the conduct of law enforcement officials in creating pressure and (2) the suspect's capacity to resist that pressure.' Seventeenth Annual Review of Criminal Procedure, 76 Geo.L.J. 676 (1988). 'If an individual's "will was over-borne" or if his confession was not "the product of a rational intellect and a free will," his confession is inadmissible because coerced.' Townsend v. Sain, 372 U.S. 293, 307, 83 S.Ct. 745, 754, 9 L.Ed.2d 770 (1963). 'The types of promises which may make a defendant's statement involuntary are, e.g., promises of leniency, promises to bring the defendant's cooperation to the attention of the prosecutor, the disclosure of incriminating evidence to the accused, and silence in response to the defendant's offer to talk if his statement would not be used against him.' Siebert v. State, [562 So.2d 586 (Ala.Cr.App. 1989)]. However, this court has made it clear that a statement 'is not rendered involuntary by a promise of benefit that was solicited freely and voluntarily by the defendant himself.' Rowe v. State, 421 So.2d 1352, 1355 (Ala.Cr.App. 1982); Eakes v. State, 387 So.2d 855, 860 (Ala.Cr.App. 1978).
 "Although appellant has attempted to transform Captain Hurst's actions into a promise of benefit or inducement, it is readily apparent from the testimony that this was simply a condition placed by the defendant on the extent of his confession at that time. Captain Hurst neither promised appellant anything nor induced him in any way. He was merely acknowledging the terms which the appellant had unilaterally imposed. Appellant had the right to remain silent. He also had a right to limit any statement which he [chose] to make. Captain Hurst was only honoring this right. Any benefit which may have accrued from this agreement was solicited freely and voluntarily by the appellant himself, and thus, failed to render his confession involuntary. Accordingly, the trial court correctly received the offered portions of appellant's confession into evidence."
Siebert, 555 So.2d at 776-77.
This court will not reverse a trial court's ruling on the voluntariness of a statement unless it is " 'manifestly contrary to the great weight of the evidence.' " Barbour v.State, 673 So.2d 461 (Ala.Cr.App. 1994), quoting Malone v.State, 452 So.2d 1386, 1389 (Ala.Cr.App. 1984). The trial court's ruling was not contrary to the great weight of the evidence. The appellant's confession was correctly received into evidence.
 II
The appellant further contends that the trial court erred in denying his motion for a change of venue. The appellant alleged that extensive pretrial publicity rendered it impossible for him to obtain a fair trial in Jefferson County.
The record indicates that the appellant produced a copy of only one newspaper article in support of his motion for a change venue. The article appeared in the November 27, 1993, edition of the Birmingham *Page 156 Post-Herald. The appellant's trial began on March 21, 1994. The appellant's counsel stipulated that only two articles were printed after the first article — one appearing on January 2, 1994, and one on January 30, 1994. The appellant admits that there was no news coverage for more than one and one-half months before his trial began.
Moreover, of the 58 potential jurors in the venire panel, 17 indicated that they had heard nothing about the case. The potential jurors were questioned individually, and only one was struck for cause based on pretrial publicity. In denying the appellant's motion, the trial court stated:
 "I disagree vehemently. [J.M.] is the only juror who cannot set aside his impressions and bring us a fair verdict and he was struck for cause. We talked to all of these people individually. These people impressed me as very conscientious people that will indeed abide by the Court's instructions and set aside whatever impressions they may have formed and bottom their verdict on the case in court. And I will be repeating that throughout the course of the litigation."
The Alabama Supreme Court has issued explicit guidelines for a trial court's determination of a motion for a change of venue based on pretrial publicity.
 "In order to grant a motion for change of venue, the defendant must prove that there existed actual prejudice against the defendant or that the community was saturated with prejudicial publicity. Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); Franklin v. State, 424 So.2d 1353 (Ala.Crim.App. 1982). Newspaper articles or widespread publicity, without more, are insufficient to grant a motion for change of venue. Anderson v. State, 362 So.2d 1296, 1298 (Ala.Crim.App. 1978). As the Supreme Court explained in Irvin v. Dowd, 366 U.S. 717, 723, 81 S.Ct. 1639, 1642-43, 6 L.Ed.2d 751 (1961):
 " 'To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court. . . .'
 "The standard of fairness does not require jurors to be totally ignorant of the facts and issues involved. Murphy v. Florida, 421 U.S. 794, 799-800, 95 S.Ct. 2031, 2035-2036, 44 L.Ed.2d 589
(1975). Thus, '[t]he proper manner for ascertaining whether adverse publicity may have biased the prospective jurors is through the voir dire examination.' Anderson v. State, 362 So.2d 1296, 1299 (Ala.Crim.App. 1978)."
Ex parte Grayson, 479 So.2d 76, 80 (Ala.), cert. denied,474 U.S. 865, 106 S.Ct. 189, 88 L.Ed.2d 157 (1985).
The appellant has not satisfied the requirements set forth in Grayson. The venire panel was examined individually and there was no evidence that the prospective jurors remaining after one juror was struck for cause could not try the case based solely on the evidence presented at trial. The trial court did not error in denying the motion for a change of venue.
 III
The appellant further contends that the trial court erred in allowing the state to strike black prospective jurors without providing race-neutral reasons. The appellant makes no argument in his brief concerning this issue, except to cite it as an issue; however, because this case involves the death penalty, this court is obliged under Rule 45A, Ala.R.App.P., to review this issue under the plain error doctrine. The plain error doctrine states:
 "In all cases in which the death penalty has been imposed, the court of criminal appeals shall notice any plain error or defect in the proceedings under review, whether or not brought to the attention of the trial court, and take appropriate appellate action by reason thereof, whenever such error has or probably has adversely affected the substantial right of the appellant." *Page 157 
In Batson v. Kentucky, 476 u.S. 79, 106 S.Ct. 1712,90 L.Ed.2d 69 (1986), the United States Supreme Court held that black prospective jurors could not be struck from a black defendant's jury based solely on their race. The United States Supreme court extended its ruling in Batson to apply to white defendants in Powers v. Ohio, 499 u.S. 400, 111 S.Ct. 1364,113 L.Ed.2d 411 (1991); to civil cases in Edmonson v. LeesvilleConcrete Co, 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660
(1991); and to defense counsel in criminal cases in Georgia v.Mccollum, 505 u.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992). The Alabama Supreme Court held in White ConsolidatedIndustries, Inc. v. American Liberty Insurance co.,617 So.2d 657 (ala. 1993), That Batson applies to the striking of white prospective jurors. In 1994, the United States supreme court extended Batson to apply to gender in J.E.B. v. Alabama, son U.S. 127, 114 S.Ct. 1419, 128 L.E.2d 89 (1994).
 "A defendant claiming a Batson violation must make a prima facie showing that the prosecution used its peremptory strikes in a discriminatory manner. Jackson v. State, 594 So.2d 1289
(Ala.Cr.App. 1991). Only when the defendant establishes facts and circumstances that raise an inference of discrimination must the state give its reasons for its peremptory strikes. Carter v. State, 603 So.2d 1137 (Ala.Cr.App. 1992)."
Stokes v. State, 648 So.2d 1179, 1180 (Ala.Cr.App. 1994).
This court had held that "[u]nder Batson v. Kentucky,476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the clear, specific, and legitimate race-neutral reason must be related 'to the particular case to be tried.' " Lane v. State,625 So.2d 1178, 1181 (Ala.Cr.App. 1993), quoting Ex parte Branch,526 So.2d 609, 623 (Ala. 1987) (emphasis in Branch). However, the United States Supreme Court recently in Purkett v.Elem, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995), defined the term "legitimate reason." The Court stated:
 "The Court of Appeals appears to have seized on our admonition in Batson that to rebut a prima facie case, the proponent of a strike 'must give a "clear and reasonably specific" explanation of his "legitimate reasons" for exercising the challenges,' Batson, 476 U.S., at 98, n. 20, 106 S.Ct., at 1724, n. 20 (quoting Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 258, 101 S.Ct. 1089, 1096, 67 L.Ed.2d 207 (1981)), and that the reason must be 'related to the particular case to be tried,' 476 U.S., at 98, 106 S.Ct., at 1724. See [Elem v. Purkett] 25 F.3d [679], at 682, 683 [(8th Cir. 1994)]. This warning was meant to refute the notion that a prosecutor could satisfy his burden of production by merely denying that he had a discriminatory motive or by merely affirming his good faith. What it means by a 'legitimate reason' is not a reason that makes sense, but a reason that does not deny equal protection. See Hernandez [v. New York, 500 U.S. 352] at 359, [111 S.Ct. 1859] at 1866, [114 L.Ed.2d 395 (1991)]; cf. Burdine, supra, at 255, 101 S.Ct., at 1094 ('The explanation provided must be legally sufficient to justify a judgment for the defendant')."
(Emphasis added.)
Since the release of Purkett a party's burden of proving that strikes were not violative of Batson is not as great as it was before the release of Purkett.
In this case the appellant contends that the state's strikes of four black prospective jurors violatedBatson. The prosecutor stated that she struck prospective juror number 128 because the prospective juror served as a juror on a prior criminal case that resulted in a hung jury. Also, she gave as another reason for striking this prospective juror the fact that his son had been treated for a psychiatric illness, and the appellant was raising the insanity defense. These reasons are nonviolative of Batson. See Watkins v. State,551 So.2d 421 (Ala.Cr.App. 1988), and Freeman v. State,651 So.2d 576 (Ala.Cr.App. 1994).
The prosecutor stated that she struck prospective juror number 179 because the juror indicated that service on the jury would be a hardship if the jury was sequestered because she had three children for whom she was responsible during the day. *Page 158 
A prospective juror's indication that service on a jury would be a hardship is a legitimate reason for striking that person. Harvey v. State, 579 So.2d 22 (Ala.Cr.App. 1990).
The prosecutor stated that she struck prospective juror number 68 because sequestration would be a hardship for him. The prospective juror was on medication that he took at home. Additionally, the prospective juror had served on a prior criminal jury that had returned a not guilty verdict. These explanations for striking the prospective juror are legitimate reasons. Harvey; Williams, supra.
Finally, the prosecutor stated that she struck prospective juror 100 because he had had a prior bad experience with law enforcement. The prospective juror had previously complained to the chief of police. A prospective juror's dissatisfaction with law enforcement constitutes a valid reason for striking that person. Gaston v. State, 581 So.2d 548 (Ala.Cr.App. 1991).
The trial court found that the state's reasons for striking the prospective jurors were race-neutral. We will reverse a trial court's ruling that no Batson violation occurred only if the ruling is "clearly erroneous." Williams v. State,634 So.2d 1034 (Ala.Cr.App. 1993). The trial court's ruling in this case was not clearly erroneous.
 IV
The appellant further contends that the court erred in instructing the jury during the guilt phase that the standard of proof for showing that the defendant suffered from a mental disease or defect, commonly referred to as the insanity defense, is "clear and convincing evidence." The appellant, in support of his contention, cites this court's opinion in Bass v. State, 585 So.2d 225 (Ala.Cr.App. 1991), which he claims stated that insanity must be proven by a "preponderance of the evidence." This court in Bass stated:
 " 'While the new § 13A-3-1(a) contains only the "cognitive" test, the defendant must make a two-part showing to meet this test. "First, he must establish that he suffered from a serious mental disease or defect at the time of the crime. Second, his mental disease or defect must have prevented him from appreciating the nature and quality or wrongfulness of his acts." United States v. Knott, 894 F.2d 1119, 1121 (9th Cir.), cert. denied, 498 U.S. 873, 111 S.Ct. 197, 112 L.Ed.2d 158 (1990) (citations omitted) (emphasis added [in Bass]). The defendant must prove both prongs of this test "by clear and convincing evidence." § 13A-3-1(c) (Supp. 1990).
 " 'While new § 13A-3-1(a) contains a much more restrictive definition of insanity than that under which we previously operated, the general principles of law regarding the defense of insanity remain unchanged. Those principles have been summarized as follows:
 " ' "1. By statute, there is a presumption of sanity extending to all persons over the age of 14.
 " ' "2. The defense of insanity is an affirmative defense. The burden of proving this defense rests upon the defendant and never shifts to the state.
 " ' "3. The burden upon the defendant is to establish the issue of legal insanity by a preponderance of the evidence and to the reasonable satisfaction of the jury.
 " ' "4. The question of insanity at the time of the commission of the crime is a matter to be determined by the jury from a consideration of all the evidence.
 " ' "5. In making its determination, the jury may reject all expert testimony though it is without conflict.
 " ' "6. However, opinion testimony, even of experts, must be weighed by the jury and may not be arbitrarily ignored.
" ' ". . . .
 " ' "The one exception to these rules is found in those cases where the proof of insanity is overwhelming and uncontradicted.
 " ' " 'Cases of insanity may be so clear, the proof so strong and undisputed, that the jury should be instructed in like form.' Boyle v. State, 229 Ala. 212, 222, 154 So. 575, 583
(1934)."
 " 'Herbert v. State, 357 So.2d 683, 688-89
(Ala.Cr.App.), cert. denied, 357 So.2d 690
(Ala. 1978). See also 'Christian v. State, *Page 159 351 So.2d 623, 624-25 (Ala. 1977); Ellis v. State, 570 So.2d 744, 749-753 (Ala.Cr.App. 1990).' "
Bass, 585 So.2d at 233, quoting Ware v. State, 584 So.2d 939
(Ala.Cr.App. 1991). The appellant argues that paragraph 3 in the quoted portion above reflects a holding by this court in Bass
that the standard for proving insanity remains a "preponderance of the evidence."
Section 13A-3-1(c), Code of Alabama 1975, provides: "The defendant has the burden of proving the defense of insanity by clear and convincing evidence." Caselaw has cited this statute. In Haynes v. State, 644 So.2d 1281, 1282
(Ala.Cr.App. 1994), this court stated:
 "Legal insanity is an affirmative defense and the burden of proof rests upon the accused to establish by clear and convincing evidence that he was suffering from a severe mental disease or defect at the time the crime was committed. § 13A-3-1, Code of Alabama 1975. See Odom v. State, 527 So.2d 1362 (Ala.Cr.App. 1988); McFarland v. State, 581 So.2d 1249 (Ala.Cr.App. 1991). By statute, there is a presumption of sanity extending to all persons over the age of 14. § 15-16-2, Code of Alabama 1975. See Odom v. State, 527 So.2d 1362 (Ala.Cr.App.[1988]). The question of whether the appellant was legally insane during the commission of the offense is a question for the jury to decide after reviewing all the evidence. Ellis v. State, 570 So.2d 744 (Ala.Cr.App. 1990)."
In Dixon v. State, 668 So.2d 65 (Ala.Cr.App. 1994), this court stated:
 " 'It is an affirmative defense to a prosecution for any crime that, at the time of the commission of the acts constituting the offense, the defendant, as a result of severe mental disease or defect, was unable to appreciate the nature and quality or wrongfulness of his acts.' Ala. Code 1975, § 13A-3-1(a).
 " 'The general principles of law regarding the burden of proof and the defense of insanity were . . . set forth and considered in Christian v. State, Ala., 351 So.2d 623 (1977). Those principles may be summarized as follows:
 " '1. By statute, there is a presumption of sanity extending to all persons over the age of 14.
 " '2. The defense of insanity is an affirmative defense. The burden of proving this defense rests upon the defendant and never shifts to the state.
 " '3. The burden upon the defendant is to establish the issue of legal insanity by a preponderance of the evidence and to the reasonable satisfaction of the jury. [Now, under Ala. Code § 13A-3-1(c), "[t]he defendant has the burden of proving the defense of insanity by clear and convincing evidence."]
 " '4. The question of insanity at the time of the commission of the crime is a matter to be determined by the jury from a consideration of all the evidence.
 " '5. In making its determination, the jury may reject all expert testimony though it is without conflict.
 " '6. However, opinion testimony, even of experts must be weighed by the jury and may not be arbitrarily ignored."
" '. . . .
 " 'The one exception to these rules is found in those cases where the proof of insanity is overwhelming and uncontradicted.
 " ' "Cases of insanity may be so clear, the proof so strong and undisputed, that the jury should be instructed in like form." Boyle v. State, 229 Ala. 212, 222, 154 So. 575, 583
(1934).'
 "Herbert v. State, 357 So.2d 683, 688-89
(Ala.Cr.App.) (bracketed material added), cert. denied, 357 So.2d 690 (Ala. 1978)."
Dixon, 668 So.2d at 69-70. (Emphasis added.)
It is clear that this court quoting Ware v. State, in Bass, failed to identify the current insanity defense standard as this court specifically did in Dixon. To the extent that Bass
conflicts with current statutory law it is specifically overruled.
The instruction on the insanity defense in the AlabamaPattern Jury Instructions — Criminal, reads as follows: *Page 160 
 "To the charge against him in the indictment the defendant has (also) entered a plea that he is not guilty by reason of severe mental disease or defect.
 "It is an affirmative defense to a prosecution for any crime that at the time of the commission of the acts constituting the crime, the defendant:
 "(1) was suffering from a severe mental disease or defect; and
 "(2) that as a result of such severe mental disease or defect he (either):
 "(a) was unable to appreciate the nature and quality of his acts;
"(or)
 "(b) was unable to appreciate the wrongfulness of his acts.
 "However, every person over 14 years of age is presumed by law to be responsible for his acts. In other words, he is presumed to have sufficient mental capacity to appreciate the fact that certain types of conduct are criminal or that they are acts which are against the law. He is also presumed to possess sufficient mental capacity to appreciate the nature and quality of his acts.
 "The presumption that a person has sufficient mental capacity to appreciate the criminal nature of certain conduct and to appreciate the nature and quality of his acts is a fact in the case which must be considered by the jury along with all the evidence. This presumption is rebuttable by evidence to the contrary.
 "By entering this plea, the defendant does not waive or give up his general plea of not guilty. Likewise, he does not give up the presumption that he is innocent until proven guilty. The burden is still on the State to prove each and every essential element of the crime charged beyond a reasonable doubt.
 "By entering his plea or not guilty by reason of severe mental disease or defect, the defendant does assume the burden of proving by clear and convincing evidence to the reasonable satisfaction of the jury:
 "(1) That at the time of the commission of the alleged acts constituting all or an essential element of the crime with which he is charged he was suffering from a severe mental disease or defect; and
 "(2) That as a result of such severe mental disease or defect he (either):
 "(a) was unable to appreciate the nature and quality of his acts;
"(or)
 "(b) was unable to appreciate the wrongfulness of his acts.
 "Whether or not the defendant was suffering from such severe mental disease or defect is for you the jury to determine from all the evidence to your reasonable satisfaction.
 "[Use if Appropriate] In making the determination whether the defendant, at the time of the commission of the crime charged, was unable to appreciate the nature or quality or wrongfulness of his acts, the law provides some guidance to you in this respect: the phrase 'severe mental disease or defect' does not include an abnormality of the mind which is manifested only by repeated criminal or other antisocial conduct. That is to say, any repeated criminal or other antisocial conduct of the defendant, standing alone, does not constitute sufficient evidence that he suffered from severe mental disease or defect."
The trial court gave the correct jury instruction on insanity. No error occurred here.
 V
The appellant further contends that the court erred in allowing the state to present evidence of the impact of the victim's death on others during the penalty phase of the trial.
This issue has been resolved by the United States Supreme Court in Payne v. Tennessee, 501 U.S. 808, 111 S.Ct. 2597,115 L.Ed.2d 720 (1991). This court in Hutcherson v. State,677 So.2d 1174 (Ala.Cr.App. 1994) citing Payne, stated the following:
 " 'Just over a year ago, the United States Supreme Court held that a prosecutor may present and argue evidence relating to the victim and the impact of the victim's death on the victim's family in the *Page 161 
penalty phase of a capital trial. Payne v. Tennessee, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). Payne overruled Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), which had prohibited the introduction of such evidence at the penalty phase, and South Carolina v. Gathers, 490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989), which had prohibited the argument of such evidence at the penalty phase. The Court's decision in Payne was based in large measure on the premise that this type evidence related to the harm done by the defendant and, consequently, was a valid consideration in determining the punishment to be imposed. The Court also noted that, in fairness to the State, it was necessary to allow the prosecutor to rebut, to some extent, the wide variety of mitigation evidence that can be offered at the penalty phase by a capital defendant. 501 U.S. at 824-28, 111 S.Ct. at 2608-09.' "
Hutcherson, 677 So.2d at 1200-1201, quoting McNair v. State,653 So.2d 320, 331 (Ala.Cr.App. 1992), aff'd on return to remand, 653 So.2d 351 (Ala.Cr.App.), aff'd, 653 So.2d 353
(Ala. 1994), cert. denied, 513 U.S. 1159, 115 S.Ct. 1121,130 L.Ed.2d 1084 (1995). See also Taylor v. State, 666 So.2d 36
(Ala.Cr.App. 1994).
Evidence of the impact of the victim's death is now admissible at the penalty phase of a capital prosecution.
 VI
The appellant also contends that the court erred in refusing to give a requested jury instruction during the penalty phase of the trial. The appellant's requested jury instruction read:
 "If you see fit, whether mitigating circumstances exist or not, you may recommend mercy for Jack Harrison Trawick. This recommendation is solely in your discretion and not controlled by any rule of law. You may make such recommendation with or without reason."
This court in Morrison v. State, 500 So.2d 36
(Ala.Cr.App. 1985), aff'd, 500 So.2d 57 (Ala. 1986), cert. denied, 481 U.S. 1007, 107 S.Ct. 1634, 95 L.Ed.2d 207 (1987), addressed the propriety of the trial court's refusal to give the same jury instruction. This court stated:
 "In Whisenhant v. State, 482 So.2d 1225
(Ala.Cr.App. 1982), this Court discussed the propriety of this precise charge and held that it was properly refused as an erroneous statement of the law in Alabama. This holding was specifically affirmed by the Alabama Supreme Court in Ex parte Whisenhant, 482 So.2d 1241 (Ala. 1983).
 "This court in Whisenhant stated that the correct principle underlying this issue was stated in Beck v. State, 396 So.2d 645 (Ala. 1980), as follows:
 " 'The court shall instruct the jury that in determining whether to fix a punishment of death, the jury must weigh the aggravating and mitigating circumstances in determining whether to fix the punishment at death. The trial court shall instruct the jury to avoid any influence of passion, prejudice or other arbitrary factor while deliberating and fixing the sentence.'
 "We noted that while it is clearly the duty of the jury to weigh aggravating and mitigating circumstances it is not, as this charge implies, free to arbitrarily ignore any factor either positive or negative in arriving at the correct sentence. We also noted that we viewed Proffitt v. Florida, [428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976)], as having tacitly held that such a mercy option is not a constitutional requirement. In Proffitt, Mr. Justice White, in his concurrence, noted that in Florida when the aggravating circumstances outweigh the mitigating circumstances the sentencing authority is required to impose the death penalty. We therefore noted that the required imposition of the death penalty, regardless of mercy, was determined to be constitutional in Proffitt, and that this was in keeping with the interest that arbitrary and capricious imposition of the death penalty be avoided. Hopper v. Evans, 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982). Here again, for the above stated reasons, we hold that the trial court did not err in *Page 162 
refusing to grant appellant's requested charge number five."
500 So.2d at 43.
For the reasons discussed above, we conclude that the court committed no error in denying appellant's jury instruction.
 VII
As required by § 13A-5-53, Code of Alabama 1975, this court must address the propriety of the appellant's conviction and sentence to death. The appellant was indicted and convicted for murder made capital as provided in § 13A-5-40(a)(1), because the killing was committed during a kidnapping.
The record reflects that the appellant's sentence was not imposed under the influence of passion, prejudice, or any other arbitrary factor. § 13A-5-53(b)(1), Code of Alabama 1975.
A review of the record shows that the trial court correctly found that the aggravating circumstances outweighed the mitigating circumstances. The trial court reviewed all of the evidence offered in mitigation and found that none of the mitigating circumstances enumerated in § 13A-5-51 existed. The trial court did find the mitigating circumstances defined in §13A-5-52 to apply. The trial court stated in its order:
 "The defendant's long history of psychiatric disturbances though not sufficient for a finding that the defendant committed his offense while under the influence of extreme mental or emotional disturbance or sufficient to substantially diminish or impair his appreciation for the wrongfulness of his actions or to conform his actions to the requirements of the law yet do, taken as a whole, comprise such a significant feature of the defendant's profile that his characterological defects do mitigate his blame worthiness."
The court found as an aggravating circumstance that the offense was committed during the commission of a kidnapping, § 13A-5-49(a)(4). The trial court weighed the mitigating and the aggravating circumstances and sentenced the appellant to death. We agree with the court's findings.
However, pursuant to § 13A-5-53(b)(2), this court must independently weigh the aggravating and the mitigating circumstances to determine the propriety of the appellant's death sentence. After an independent weighing, this court is convinced that the appellant's sentence to death by electrocution is appropriate in this case.
As further required by § 13A-5-53(b)(3), this court must determine whether the appellant's sentence to death was disproportionate or excessive when compared to the penalties imposed in similar cases. The appellant's sentence was neither disproportionate nor excessive. Thompson v. State,542 So.2d 1286 Ala.Cr.App. 1988), aff'd, 542 So.2d 1300 (Ala.), cert. denied, 493 U.S. 874, 110 S.Ct. 208, 107 L.Ed.2d 161 (1989);Neelley v. State, 494 So.2d 669 (Ala.Cr.App. 1985), aff'd,494 So.2d 697 (Ala. 1986), cert. denied, 480 U.S. 926,107 S.Ct. 1389, 94 L.Ed.2d 702 (1987); Heath v. State, 455 So.2d 898
(Ala.Cr.App. 1983), aff'd, 455 So.2d 905 (Ala. 1984), aff'd,474 U.S. 82, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985).
Last, as required by Rule 45A, Ala.R.App.P., we have searched the entire record for any error that may have adversely affected the appellant's substantial rights and have found none.
The appellant's conviction and his sentence to death by electrocution are due to be, and are hereby, affirmed.
AFFIRMED.
All the Judges concur.
* Note from the reporter of decisions: In its opinion, the Alabama Supreme Court spelled the victim's name "Gach."698 So.2d 162 (Ala. 1997). Both the "Gach" and "Gash" spellings appear at various points in the record.