[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 18, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-11611

_____

D. C. Docket No. 02-01511-CV-CLS-TMP

JACK TRAWICK,

Petitioner-Appellant,

versus

RICHARD ALLEN, Commissioner of the
Alabama Department of Corrections,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(March 18, 2008)

Before EDMONDSON, Chief Judge, BLACK and BARKETT, Circuit Judges.

PER CURIAM:

Jack Trawick appeals from the denial of his habeas corpus petition filed

pursuant to 28 U.S.C. § 2254.  Trawick was convicted of capital murder in

Alabama in 1994 and sentenced to death.  Both the Alabama Court of Criminal

Appeals and the Alabama Supreme Court affirmed Trawick's conviction and death sentence for the kidnaping and murder of Stephanie Gash, and the U.S. Supreme Court denied Trawick's petition for a writ of certiorari. Trawick v. State, 698 So. 2d 151 (Ala. Crim. App. 1995); Ex parte Trawick, 698 So. 2d 162 (Ala. 1997); Trawick v. Alabama, 522 U.S. 1000 (1997). His Alabama Rule 32 petition was denied, and that denial was summarily affirmed on appeal. Trawick v. State, 854 So. 2d 1215 (Ala. Crim. App. 2002); Ex parte Trawick, 856 So. 2d 963 (Ala. 2002). Trawick then filed this federal habeas corpus petition, which the district court denied. This appeal followed.

The only issue before us on appeal is whether Trawick is entitled to federal habeas relief on his claim that the State of Alabama exercised its peremptory strikes in a discriminatory manner by using eleven of its fourteen strikes to remove women from the venire in violation of J.E.B. v. Alabama, 511 U.S. 127 (1994), which prohibits gender discrimination in jury selection.[1] Although Trawick did not raise any objection to gender-biased striking during trial, he did argue that claim on direct appeal to the Alabama Supreme Court on the basis of J.E.B., which the U.S. Supreme Court decided several weeks after Trawick's conviction.[2] The Alabama

---

[1] This is the sole issue upon which a Certificate of Appealability was granted.

[2] Trawick was convicted by a petit jury on March 23, 1994. The U.S. Supreme Court issued J.E.B. on April 14, 1994.

2

Supreme Court held that Trawick failed to establish a prima facie case of gender discrimination.

## I. Standard of Review

This Court reviews a district court's legal findings de novo. Housel v. Head, 238 F.3d 1289, 1294 (11th Cir. 2001). Because this case arises on habeas review, the district court correctly reviewed the state court's determination under the highly deferential standard of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, a federal court may not grant habeas relief unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2). The state court's factual determinations are "presumed to be correct" and the petitioner has the "burden of rebutting the presumption of correctness by clear and convincing evidence." Id. § 2254(e)(1).

## II. Discussion

In J.E.B., the U.S. Supreme Court extended the prohibition against race-based discrimination in jury selection articulated in Batson v. Kentucky, 476 U.S. 79 (1986), to prohibit gender-based discrimination as well. In doing so, the

3

Supreme Court held that "gender, like race, is an unconstitutional proxy for juror competence and impartiality." J.E.B., 511 U.S. at 129. As with a claim of racial discrimination, a party making a J.E.B. challenge bears the burden of proving a prima facie case of gender discrimination by showing "'that the totality of the relevant facts gives rise to an inference of discriminatory purpose.'" Johnson v. California, 545 U.S. 162, 168 (2005) (quoting Batson, 476 U.S. at 93-94); see also J.E.B., 511 U.S. at 144–45. Once a party establishes a prima facie case of gender discrimination, the burden shifts to the prosecutor to offer gender-neutral explanations which are not pretextual for the challenged strikes. J.E.B., 511 U.S. at 144–45. The third step in the Batson/J.E.B. framework then requires the trial judge to decide whether the opponent of the strike has proven purposeful discrimination. Johnson, 545 U.S. at 168.

The Alabama Supreme Court determined that Trawick had not established a prima facie case of gender discrimination because the number and pattern of strikes did not suffice to establish a prima facie case. We must review that decision of the Alabama Supreme Court to determine if it was "contrary to" or involved "an unreasonable application of" established U.S. Supreme Court precedent.

During Trawick's jury selection, there were forty-two jurors on the venire, of which nineteen, or forty-five percent, were women. The prosecution used

4

eleven out of its fourteen peremptory strikes to eliminate women from the jury, including the first seven.[3] However, the final jury was composed of seven men and five women.

During voir dire, Trawick did object to the prosecution's use of peremptory strikes, alleging that they were racially motivated and thus violated Batson. The trial judge required the prosecutor to articulate race-neutral reasons for striking the black members of the venire and, rejecting the prosecution's articulated race-neutral reasons for striking three black jurors, the court reinstated them to serve on the jury. Trawick did not, however, object on the basis of gender discrimination.

On appeal, Trawick argues that both the Alabama Supreme Court and the district court here erred in rejecting his gender discrimination claim, and that neither court gave adequate consideration to the arguments he made in addition to the number and pattern of gender-based strikes.[4] He contends that the following additional factors support a finding of a prima facie case: 1) the history of discrimination in peremptory striking by the prosecutor's office; 2) the disparate

---

[3] Fourteen peremptory strikes were exercised, as well as an additional strike of an alternate who was a white male.

[4] The State argues, and the district court agreed, that given the fact that the prosecutor and the victim in this case were women, there was no clear motivation to discriminate against women on the jury. As the Supreme Court has previously done, we reject this rationale altogether. See J.E.B., 511 U.S. at 138–39 (rejecting gender-based stereotypes related to the facts of the case as a defense to gender-based discriminatory striking).

5

treatment of men and women on the jury; 3) the lack of meaningful voir dire conducted by the prosecution; and 4) the fact that the only common factor among the women struck from the jury was their gender.

Initially, we are satisfied that the Alabama Supreme Court considered his arguments regarding these factors. The court's opinion specifically acknowledges his argument that the prosecutor's office had a history of racial discrimination in jury selection and although it does not specifically address each of the arguments advanced by Trawick, we cannot assume that the court failed to consider all of the arguments Trawick presented.

Although Trawick may be correct that J.E.B. recognized that "gender and race are overlapping categories," 511 U.S. at 145, and past racial discrimination may be considered as evidence that the prosecutor is willing and able to discriminate in jury selection, we cannot say without some evidence evincing a relationship to gender discrimination in this case that the Alabama Supreme Court erred in rejecting this factor.[5]

---

[5] Trawick cites to a series of Batson cases to support his argument that the Jefferson County prosecutor's office has historically racially discriminated in the selection of juries. (Appellant's Br. at 12–13) (citing Cochran v. Herring, 43 F.3d 1404 (11th Cir. 1995); United States v. Gordon, 817 F.2d 1538 (11th Cir. 1987); Ex parte Bankhead, 625 So. 2d 1146 (Ala. 1993); Smith v. State, 620 So. 2d 732 (Ala. Crim. App. 1992); Ex parte Williams, 571 So. 2d 987 (Ala. 1990); McElemore v. State, 798 So. 2d 693 (Ala. Crim. App. 2000); Miesner v. State, 665 So. 2d 978 (Ala. Crim. App. 1995); Hodge v. State, 665 So. 2d 959 (Ala. Crim. App. 1995); Richmond v. State, 590 So. 2d 384 (Ala. Crim. App. 1991)).

Similarly, we cannot say that the trial record "provides clear evidence that the State treated male and female jurors who shared the same characteristics in a dramatically different manner." (Appellant's Br. at 14.) In this complicated capital case, jurors were questioned about, among other things, their views on the death penalty, amenability to sequestration, personal experiences with mental health professionals, and previous involvement with the criminal justice system. The fact that two women stricken from the venire offered similar answers to men who were chosen for the jury in response to a single question regarding media exposure to the case is an isolated example in this record that simply does not amount to disparate treatment of men and women with "the same characteristics." Without more, we cannot find that the Alabama Supreme Court erred in finding that Trawick failed to provide evidence that there was gender-based disparate treatment of similarly-situated individuals.

Nor can we say that the Alabama Supreme Court erred in rejecting the argument that there was a lack of meaningful voir dire of jurors whom the state struck. In Batson, the Supreme Court instructed that "the prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose." Batson, 476 U.S. at 97. However, "the mere fact that . . . counsel decided to exercise peremptory

7

challenges against jurors who had not been extensively questioned during voir dire does not establish a discriminatory purpose." Cent. Ala. Fair Hous. Ctr., Inc. v. Lowder Realty Co., Inc., 236 F.3d 629, 638 (11th Cir. 2000) (citing United States v. Allison, 908 F.2d 1531, 1538 (11th Cir. 1990)). Here, Trawick offers no explanation as to how the prosecutor's conduct is evidence of gender bias, particularly because Trawick does not allege that the prosecutor only failed to question members of either gender. Trawick's contentions amount to conclusory statements characterizing the prosecutor's performance. Thus, we cannot find that the Alabama Supreme Court unreasonably disregarded Trawick's argument that the lack of meaningful voir dire was evidence of gender discrimination.

Trawick also argues that the female jurors who were stricken from the venire "had in common only one characteristic—their gender." (Appellant Br. at 16.) The Alabama Supreme Court explicitly recognized that a relevant factor in determining whether a prima facie case had been made was "evidence that the jurors in question shared only the characteristic of gender and were in all other respects as heterogenous as the community as a whole." Ex parte Trawick, 698 So. 2d at 168. To that end, Trawick lists several factors which distinguish the women stricken from the jury from one another—their marital status, employment status, and parental status.

8

While the cited biographical factors indicate that there was diversity among the women stricken from the venire, there were significant characteristics shared by various subsets of the women as well. For example, five of the women had been victims of violent crimes in the past. Seven of the women had previous experiences in the criminal justice system, either as witnesses or members of a jury. Three of the women had past experience with mental health professionals. Another three of the women expressed reluctance at being sequestered for the duration of the week. Given these substantial similarities among some of the women stricken from the jury, we cannot say that it was unreasonable to disregard Trawick's contention that the female venire members were "as heterogenous as the community as a whole."

Finally, in light of this record, we cannot say that the Alabama Supreme Court erred in rejecting Trawick's argument that the number and pattern of strikes against female jurors in this case sufficed to establish a prima facie case. While Batson states that "a 'pattern' of strikes against black jurors . . . might give rise to an inference of discrimination," 476 U.S. at 97, the Supreme Court did not explicitly determine whether a pattern of strikes alone is enough to permit a judge to draw the necessary inference. Rather, the Supreme Court instructed judges to consider "all relevant circumstances" relating to jury selection in determining

9

whether a prima facie case of discrimination exists.  <u>Batson</u>, 476 U.S. at 96.

In this case, the prosecution used eleven of its peremptory strikes to remove approximately fifty-eight percent of the nineteen women on the venire.  The original venire was forty-five percent women, and the final seated jury was forty-two percent women.  The number of women struck is not so disparate from the number of women on the venire as to render the Alabama Supreme Court's determination clearly erroneous.  Moreover, though it is not a dispositive factor, this Court has held "that the unchallenged presence of jurors of a particular [gender] on a jury substantially weakens the basis for a prima facie case of discrimination in the peremptory striking of jurors of that [gender]."  <u>Lowder</u>, 236 F.3d at 638.

Given the facts of this case, we cannot find that the Alabama Supreme Court erred in concluding that Trawick's reliance on the number and pattern of strikes against women was, without more, insufficient to establish a prima facie case of gender discrimination in this case.  We have reviewed the record and based thereupon cannot say that the Alabama Supreme Court's ultimate conclusion was "contrary to" or involved an "unreasonable application of" federal law.  Accordingly, the district court opinion denying Trawick's petition for habeas relief is **AFFIRMED**.