Robert Lane, Jr., the appellant, was convicted of five counts charging the unlawful distribution of cocaine, in violation of Ala. Code 1975, § 13A-12-211. He was sentenced to 20 years' imprisonment on each count. Each 20-year sentence included enhancements under § 13A-12-250 (sale near a school) and § 13A-12-270 (sale near a public housing project). On this appeal from those convictions, the appellant contends that his constitutional right to a fair and impartial jury was denied because of the prosecutor's voir dire of the jury venire concerning other alleged drug dealers.
After the trial court qualified the jury venire, the following occurred:
 "THE COURT: Mr. Lanier [defense counsel], you have any special qualifications?
 "MR. LANIER: Yes sir, if we could get on the record. We would object to the State's requested voir dire number 8 unless those individuals are witnesses in the case. . . .
"THE COURT: Who are the folks?
 "(district attorney conferred with the court outside the hearing of the Court Reporter)
 "MS. LOGGINS [district attorney]: The people that we are asking about in this question number 8 are either relatives of the defendant or they are people who are also involved in selling drugs with him in that area during the same period of time.
"THE COURT: I am going to overrule the objection.
 "MR. LANIER: It is my understanding that the people named in number 8 are individuals that they say are on these tapes?
"MS. LOGGINS: No.
"MR. LANIER: That is not what you just said?
 "THE COURT: They were mentioned on tapes or they are relatives.
 "MS. LOGGINS: They are involved in the same drug selling. They might not have been on tape.
 "MR. LANIER: Well, to renew my objection — they either are or they aren't, we haven't heard the tapes.
"THE COURT: I am going to overrule the objection.
 "MS. LOGGINS: Your Honor, we would want to put on the record that for the purposes of Batson [v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986),] that after we have searching voir dire and we are trying to do that as limitedly as possible, with some constraints. That is part of the reason for asking this question is for Batson
purposes.
 "MR. LANIER: Well, Judge, for the record I would just like to get it on the record that it has become the policy of the district attorney's office to read names of people who have appeared in newspapers, and just recently, that have nothing to do with the case involved. And this is another example. No one on this list is related to the defendant and none were arrested at the time that he was arrested and to the best of our understanding, according to my client, I don't think that will be the case.
 "THE COURT: Whose name has been listed in the newspaper?
 "MR. LANIER: Several of those names. I recognize them myself as having been arrested.
 "THE COURT: You recognize them as having been arrested or you recognize them as having been in the newspaper?
"MR. LANIER: And as having been arrested.
 "THE COURT: Ladies and gentlemen, give us one more minute, please.
 "(court was resumed in Judge's chambers with counsel for the parties and the defendant present)
 "THE COURT: Question number 8 deals with, the district attorney wants to ask, if any of you are acquainted to any of the following people. The defendant's attorney objects. He says that several of those people have been arrested . . . and their names put in the paper, purportedly. I *Page 1180 
think I got the gist of it, but what is the relationship of these people to this case?
 "MS. LOGGINS: Hubert Lane, Naomi Lane, Billy Ray Stackhouse, Tobay Lane, Leonard Townsend, Virginia Coleman, James Earl Stackhouse, Dennis Lane, Steven Brundidge and Cindy Bush were all arrested under the same drug operation. Now whether that shows up on this tape or not, I don't know. There are six different tapes and there is another case pending against this defendant. Against this defendant where a Cindy Bush and Naomi Lane are co-defendants. Naomi Lane we believe is his mother; Stackhouse is a relative; Dennis Lane is a relative. And because of Batson, we can't strike people. We have to find out if they are in fact related, are they in fact acquainted with his family, or acquainted with people involved in dealing drugs in the same area or at the same time he was doing it.
 "There is no other way than to ask if he is acquainted with these people or related to them. And we are held to strike by Batson so we have no other way to answer Batson. In fact we are supposed to ask people are they related to somebody that is convicted of a crime, we are supposed to ask all of those sorts of things. We are held to that standard so that is the reason we are asking these sorts of questions, because if they know these people we would know that they were arrested under these charges and would have some type of interest in this case, knowing relatives or friends of his who are also arrested or involved in drugs in this nine months ago.
 "We have not at any time made a habit of calling out people's name[s] in the newspaper. I don't believe Mr. Lanier would be able to cite any incident that he is referring to. I don't know that it has ever been a practice in our circuit in the past. We have always asked certain questions and tried to limit our voir dire to as little as possible.
"THE COURT: You have anything else?
 "MR. LANIER: No, sir, I think the record will speak for itself. And in the past we have come up with names that are not related or involved in a case itself and asking questions about do you know the mayor of Andalusia, do you know the Chairman of the Covington County Commission, and those are really proper voir dire questions [sic] and that —.
 "MS. LOGGINS: Your Honor, when has that ever happened?
 "THE COURT: I have both of your positions and I am going to overrule the objection.
 "(court was resumed back in the presence of the venire in open court)
"(whereupon a jury was qualified)" R. 815.
The voir dire of the jury is not contained in the record on appeal and there is no indication that the question proposed by the district attorney was ever actually asked of the venire. We consider this situation akin to that presented by the denial of a motion in limine:
 "A party who suffers an adverse ruling on a motion in limine can preserve the ruling for post-judgment and appellate review only by objecting to the introduction of the proffered evidence and assigning specific grounds at the time of trial, unless he or she obtains the express acquiescence of the trial judge that a subsequent objection and assignment of grounds are not necessary."
Parks v. State, 587 So.2d 1012, 1015 (Ala. 1991) (emphasis in original). "A reviewing court cannot predicate error on matters not shown by the record." Robinson v. State, 444 So.2d 884, 885
(Ala. 1983). Under the circumstances presented by this case, we conclude that the trial court did not abuse its discretion in this regard.
In Tucker v. State, 429 So.2d 1165, 1167 (Ala.Cr.App. 1983), this Court found that the trial court had not abused its discretion in "allow[ing] the prosecutor to read the names of other criminal defendants, indicted for drug offenses, from the weekly circuit court docket while qualifying the venire on voir dire."
In Ex parte Bird, 594 So.2d 676, 683 (Ala. 1991), the Alabama Supreme Court held that "the failure of the State to engage in any meaningful voir dire on a subject of alleged *Page 1181 
concern is evidence that the explanation [given for striking the veniremember] is a sham and a pretext for discrimination. . . . Thus, if the prosecutrix thinks that a veniremember may be related to a former defendant, she must ask the veniremember."
 "The United States Supreme Court has held, and this Court has reiterated the holding, that among the things to be considered by the trial court in determining whether a prima facie showing has been made are '[t]he type and manner of the [responding party's] attorney's questions and statements during voir dire, including nothing more than desultory voir dire.' Ex parte Branch, 526 So.2d [609,] at 623 [(Ala. 1987)], citing Batson, 476 U.S. at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88; and '[t]he type and manner of questions directed to the challenged juror, including a lack of questions or a lack of meaningful questions.' Ex parte Branch, 526 So.2d at 623. These considerations are also relevant in determining whether the nonobjecting litigant's proffered reasons are a sham or pretext. Ex parte Branch, 526 So.2d at 624."
Millette v. O'Neal Steel, Inc., 613 So.2d 1225, 1230 (Ala. 1992) (footnote omitted). See also Ex parte Thomas, 601 So.2d 56, 58
(Ala. 1992).
The extent and range of inquiry on voir dire of the jury venire is traditionally a matter within the sound discretion of the trial court.
 " 'In selecting a jury for a particular case, "the nature, variety, and extent of the questions that should be asked prospective jurors" must be left largely within the sound discretion of the trial court. Peoples v. State, 375 So.2d 561 (Ala.Cr.App. 1979). In other words, the scope of the voir dire examination of the jury venire is within the broad discretion of the trial court.'
 "Bracewell v. State, 447 So.2d 815, 821
(Ala.Cr.App. 1983), affirmed, 447 So.2d 827 (Ala.), cert. denied, 469 U.S. 980, 105 S.Ct. 382, 83 L.Ed.2d 318 (1984).
". . . .
 " '[A] trial lawyer [has] a broad right to question prospective jurors as to any matter which might aid him in the intelligent exercise of his right to peremptory challenges. . . . The examination is not confined to matters which disqualify a juror, but extends to any matter which might tend to affect the verdict. . . . The scope of the examination is left largely to the discretion of the trial judge.'
 "Alabama Power Co. v. Bonner, 459 So.2d 827, 831-32
(Ala. 1984), overruled as to the injection of insurance, Cooper v. Bishop Freeman Co., 495 So.2d 559 (Ala. 1986)."
Howell v. State, 618 So.2d 134, 138-139 (Ala.Cr.App. 1992).
We caution that the type of questions at issue in this case provide fertile ground for abuse. Under Batson v. Kentucky,476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the clear, specific, and legitimate race-neutral reason must be related "to the particular case to be tried." Ex parte Branch,526 So.2d 609, 623 (Ala. 1987); Huntley v. State, [Ms. 1910530, September 18, 1992], 1992 WL 228152 (Ala. 1992). Consequently, the party seeking to voir dire the jury venire regarding individuals other than the defendant must be prepared to state how those individuals are related to the particular case to be tried. The "right to question the venire 'is limited by propriety and pertinence' and 'is exercised within the sound discretion of the trial court.' . . . Furthermore, the questions must be reasonable under the circumstances of the case." McLeod v. State, 581 So.2d 1144, 1156 (Ala.Cr.App. 1990).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur. *Page 1182