The appellant, Rita Blackwell Hoobler, was convicted of theft of property in the first degree. Her sentence of four years was split and she was ordered to serve two years in the penitentiary. The appellant raises three issues.
 I
The appellant contends that her motion for a judgment of acquittal should have been granted because, she says, the State failed to prove the element of intent to deprive that is necessary to sustain a conviction for theft of property. "Deprive" is defined as "to withhold property or cause it to be withheld from a person permanently or for such period or under such circumstances that all or a portion of its use or benefit would be lost to him." Ala. Code 1975, § 13A-8-1(2)(a).
The appellant argues that the facts adduced at trial fail to establish her intent to permanently deprive the owner of the truck she allegedly stole. The appellant asserts that while she was a passenger in the truck, which was owned by one of her friends, the police attempted to serve an arrest warrant on her. According to the appellant, she merely used the truck to escape capture and she had no intent to keep the truck. However, there was evidence from which the jury could find that the appellant did intend "to withhold property or cause it to be withheld from [the victim] permanently or for such period or under such circumstances that all or a portion of its use or benefit would be lost to [her]." When the police approached the appellant, she locked herself inside the truck and refused to come out, despite the requests of her friend and the police. A chase ensued, which ended when the appellant drove over an embankment, wrecking the truck. Even at this time the appellant refused to get out of the locked truck. The owner of the truck testified that she did not give the appellant permission to take her truck. R. 109.
Intent is a jury question. "Whether a defendant possessed the intent to permanently deprive another of his property is a jury question. . . . Absent clear and convincing evidence to the contrary, the jury's finding will not be reversed on appeal. . . . We are not in the business of being substitute jurors."Pugh v. State, 536 So.2d 99, 100 (Ala.Cr.App. 1986) (The evidence was sufficient to sustain the jury's finding of guilt where "[the appellant] argues that he merely kept the video equipment beyond his lease period and that he intended to eventually return the equipment to National Video.") (citations omitted); Fuller v. State, 472 So.2d 452, 454 (Ala.Cr.App. 1985) (Jury could conclude sufficient intent existed to sustain a conviction where "the appellant stated that he intended to return the doors and windows if he was not given permission to keep them, he admitted that he did not have the owner's permission when the took them. . . . [T]he question of the appellant's intent was for the jury."). The evidence was sufficient to sustain the jury's finding that in order to avoid arrest the appellant intended to take and to *Page 907 
withhold the truck "for such period or under such circumstances that all or a portion of its use or benefit would be lost to [the victim]." Ala. Code 1975, § 13A-8-1(2)(a).
 II
The appellant contends that she was denied a trial by an impartial jury because the trial court sustained an objection to the following question asked by the appellant on voir dire:
 MR. BRAMER (defense counsel): Let me ask you another trick question. You did pretty good on the last one. But the second trick question. Right now, if you are all jurors and you have been sworn in, and you go back to the jury room, right now, what would your verdict be in this case?
R. 47.
The trial court instructed the jury that the appellant was innocent until proven guilty beyond a reasonable doubt and that "to ask you a question about what the outcome of the trial would be, would be unreasonable and unfair at this time." R. 49. The defense was allowed to answer his own question by stating:
 "MR. BRAMER: . . . [B]asically the question was what would the verdict be, and some people would say, 'We don't know because we haven't heard any evidence.' That is the whole point of the question. Your verdict at this point would be 'not guilty.' She comes into court clothed with the presumption of innocence.
 "So, if you haven't heard any evidence and you went back and you took a vote, the only vote that you could bring under the law would be not guilty, and that was the point that I was trying to make."
R. 49-50.
We find no abuse of discretion in the ruling of the trial court. " ' "In selecting a jury for a particular case, 'the nature, variety, and extent of the questions that should be asked prospective jurors' must be left largely within the sound discretion of the trial court. . . . In other words, the scope of the voir dire examination of the jury venire is within the broad discretion of the trial court." ' " Lane v. State,625 So.2d 1178, 1181 (Ala.Cr.App. 1993) (citations omitted) quotingBracewell v. State, 447 So.2d 815, 821 (Ala.Cr.App. 1983)).
 III
The appellant contends that the trial court erred in removing for cause a juror who wavered on whether she could render a fair and impartial verdict because of her past relationship with the appellant. The following transpired during voir dire.
 "MR. WIERSMA [prosecutor]: Let me ask you this, does anyone here know the defendant, Mrs. Hoobler?
"JUROR [C.C.L.]: Yes.
"MR. WIERSMA: How do you know Mrs. Hoobler?
"JUROR [C.C.L.]: I worked with her at B.C. Lounge.
 "MR. WIERSMA: And y'all were just friends at that time, is that right?
"JUROR [C.C.L.]: Yes.
"MR. WIERSMA: Did you remain friends?
"JUROR [C.C.L.]: You know, at times.
"MR. WIERSMA: How long did you work together?
"JUROR [C.C.L.]: A few months.
 "MR. WIERSMA: How long has it been that you have known her?
 "JUROR [C.C.L.]: I think back in the 80's. The late 80's.
 "MR. WIERSMA: Would the fact that you were friends with her and worked with her before, would that make it hard for you to be completely fair to both sides?
"JUROR [C.C.L.]: Yes, sir."
R.R. 30-31.
 "THE COURT: Does the State have any challenges for cause?
 "MR. WIERSMA: One would be C.C.L. She is the one who used to work with the defendant and was friends with her and [has] known her since the 80's, and, in fact, said that it would be difficult for her to render a fair decision.
 "THE COURT: Bring Mrs. C.C.L. in. (Mrs. C.C.L. in Courtroom). "Mrs. *Page 908 
C.C.L., you are C.C.L. identified on the jury list as C.C.?
"JUROR C.C.L.: Yes, sir.
 "THE COURT: I believe in response to some of the questions you were asked earlier, you indicated you know the plaintiff. How is it that you know Mrs. Hoobler?
"JUROR C.C.L.: I worked with her at B.C. Lounge.
"THE COURT: How long ago was that?
"JUROR C.C.L.: The late 80's.
 "THE COURT: Based on your — did you consider yourself friends or just acquaintances, whatever, or did you do things socially together or outside or work.
"JUROR C.C.L.: Not really.
 "THE COURT: Based on your relationship with her at that time, I would ask you this question, that if you were selected to serve as a juror on this case, would the facts that you have given us — given the facts that you have told us, would you render a fair and impartial trial to both the state and Mrs. Hoobler in this case?
"JUROR C.C.L.: No, sir.
"THE COURT: And why is that?
 "JUROR C.C.L.: I just don't want to be in that position.
"THE COURT: Do you wish to ask her anything?
 "MR. BRAMER [defense attorney]: Yes, sir. You said you didn't want, don't wish to be in that position. What position is that?
 "JUROR C.C.L.: With the position of guilty or not guilty.
 "MR. BRAMER: Because of your friendship or for other reasons?
"JUROR C.C.L.: Because I have known her.
 "MR. BRAMER: If the State of Alabama, as Judge has told you, met the burden of proof, and you are convinced beyond a reasonable doubt of Rita Hoobler's guilt, would you vote to convict her?
"JUROR C.C.L.: Yes.
 "MR. BRAMER: Judge, I believe she's qualified as a juror based on that response.
 "MR. WIERSMA: Could I ask a couple? Mrs. C.C.L., you said earlier when you were up here in front of everybody that it would make it difficult for you?
"JUROR C.C.L.: Yes.
 "MR. WIERSMA: It would be hard for you to reach a fair decision having known her in your past; is that right?
"JUROR C.C.L.: Yes.
"MR. WIERSMA: That's all I have.
 "THE COURT: I believe the current rule is that once a potential juror equivocates, you cannot rehabilitate them. So, the Court would grant the motion to strike for cause as to this juror."
R.R. 64-67.
 "The test for determining whether a juror who is acquainted with someone involved in the litigation should be excused for cause is whether the juror's acquaintance with that person would result in 'probable prejudice.' . . .
 " 'Probable prejudice for any reason disqualifies a prospective juror. Qualification of a juror is a matter within the discretion of the trial court and, on appeal, this court will look to the questions propounded and the answers given by the prospective juror to see if this discretion was properly exercised.'
". . . .
 " 'This Court is well aware of the principle that "[o]nce a [prospective] juror makes an initial statement that is vague, ambiguous, equivocal, uncertain or unclear or that shows confusion, it is the trial judge's function to question the juror further, so as to ascertain whether the juror can be impartial." Knop v. McCain, 561 So.2d 229, 234 (Ala. 1989).' "
Ford v. State, 628 So.2d 1068, 1070 (Ala.Cr.App. 1993) (some citations omitted).
Here Juror C.C.L. told the trial court that she could not render a fair and impartial verdict because of her past relationship with the appellant and that she did not want to be placed in a position of having to try to render such a verdict. It is irrelevant that the trial court mistakenly stated that a juror who equivocates cannot be rehabilitated, because the court's ruling was correct. " 'If a court's ruling is correct for any *Page 909 
reason, it will not be reversed because the court assigned the wrong reason therefor.' " Ex parte Williams, 571 So.2d 987, 988
(Ala. 1990) (citation omitted).
 " '[B]road discretion is vested with the trial court in determining whether or not to sustain challenges for cause.' . . .
 " 'Although the prospective juror's answers indicated reluctance and hesitation rather than definite inability to decide the case on the evidence alone, the trial judge was in a position to observe the demeanor and determine the prejudice of the venireman. The decision of a trial court to disqualify a juror on a challenge for cause is entitled to great weight and will not be disturbed on appeal unless clearly shown to be an abuse of discretion.'
 "Carter v. State, 420 So.2d 292, 295-96
(Ala.Cr.App. 1982). See Dinkins v. State, 584 So.2d 932, 933 (Ala.Cr.App. 1991) (trial court did not abuse discretion in excusing juror who admitted knowing the accused and his family and who told the court that his personal association with them 'would make it difficult for him to serve'); Woods v. State, 568 So.2d 331, 332-33 (Ala.Cr.App. 1990) (trial court did not abuse discretion in excusing juror whose brother 'used to "go with" defendant's sister' and who stated that she would 'rather not serve')."
Ford v. State, 628 So.2d 1068, 1070-71 (Ala.Cr.App. 1993).
The judgment of the circuit court is affirmed.
AFFIRMED.
All the Judges concur.