[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 693 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 694 
The appellant, Rondonaldrick Farrior, was convicted of murder made capital because he committed the murder by or through the use of a deadly weapon while the victim was in a vehicle, a violation of § 13A-5-40(a)(17), Ala. Code 1975. By a vote of 12-0, the jury recommended that the appellant be sentenced to life imprisonment without the possibility of parole. The trial court accepted the jury's recommendation and sentenced the appellant to life imprisonment without the possibility of parole. This appeal followed.
The evidence showed that, on November 1, 1996, school officials at the appellant's high school suspended the appellant for fighting with Ricardo McCombs. The next morning, McCombs was helping Donald Milton move. At some point, McCombs, Milton, and Milton's two young children drove to Trenholm Court. McCombs was driving Milton was in the passenger seat, and the children were in the backseat. McCombs, the appellant, who lived in Trenholm Court, and drove away from the appellant into a nearby alley. He pulled up behind a car driven by Nicole Jackson. After Jackson drove out of the alley onto the main road, McCombs began to pull onto the main road. As he turned the car, he saw the appellant and another man running toward the car. The appellant and the other man shot at McComb's car. One bullet entered the rear driver's side window and struck Milton in the head. Milton died as a result of the gunshot wound.
After leaving the Trenholm Court area, McCombs located Officer Guy Naquin, a Montgomery police officer. McCombs told Naquin that the appellant shot at the automobile. Naquin obtained the appellant's address through police dispatch, drove to Trenholm Court, and took the appellant into custody. After Naquin read the appellant his Miranda rights, the appellant denied any knowledge of the murder. When the appellant arrived at the police station, Detective D. Cunningham questioned him. Cunningham again advised the appellant of his Miranda rights and informed him that he could be charged with capital murder. The appellant waived hisMiranda rights and made a statement. At first, he told Cunningham he acted by himself in the shooting, saying he shot at McCombs' car because he thought McCombs was going to run over him. Later, after speaking to his mother, the appellant gave another statement in which he recanted his original statement that he acted alone and stated that another man also shot at McCombs' car.
The testimony indicated that McCombs was driving away from the appellant as the appellant shot at the car. Also, evidence showed that several shots were fired at the car. In addition to McCombs' identification of the appellant as one of the men who shot at his car, another witness identified the appellant as one of the gunmen.
 I.
The appellant first argues that the evidence was not sufficient to support his conviction. Specifically, he argues that the state did not prove he had the intent to commit murder.
 "`In determining whether there is sufficient evidence to support the verdict of the jury and the, judgment of the trial court, we must accept as true the evidence introduced by the state, accord the state all legitimate inferences therefrom, and view the evidence in the light most favorable to the prosecution.'"
Gunter v. State, 665 So.2d 1008, 1011 (Ala.Cr.App. 1995), quoting Underwood v. State, 646 So.2d 692, 695 (Ala.Cr.App. 1993). When reviewing a trial court's denial of a motion for a *Page 695 
judgment of acquittal we must determine "whether there existed legal evidence before the jury, at the time the motion was made, from which the jury by fair inference could have found the appellant guilty." Breckenridge v. State, 628 So.2d 1012, 1018
(Ala.Cr.App. 1993). Therefore, in applying this standard, we
 "will determine only if legal evidence was presented from which the jury could have found the defendant guilty beyond a reasonable doubt. . . . A verdict of conviction will not be set aside on the ground of insufficiency of the evidence unless, allowing all reasonable presumptions for its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince this court that it was wrong and unjust."
Id.
Section 13A-6-2, Ala. Code 1975, provides, in pertinent part:
"(a) A person commits the crime of murder if:
 "(1) With intent to cause the death of another person, he causes the death of that person or of another person."
Under § 13A-5-40(a)(17), Ala. Code 1975, "[m]urder committed by or through the use of a deadly weapon while the victim is in a vehicle" is a capital offense.
 "`[T]he element of intent, being a state of mind or mental purpose, is usually incapable of direct proof; [and] it may be inferred from the character of the assault, the use of a deadly weapon and other attendant circumstances.' Johnson v. State, 390 So.2d 1160, 1167 (Ala.Cr.App.), cert. denied, 390 So.2d 1168, (Ala. 1980)."
Jones v. State, 591 So.2d 569, 574 (Ala.Cr.App. 1991); see alsoCrew v. State, 616 So.2d 392 (Ala.Cr.App. 1993). Intent is a jury question. Jones, 591 So.2d at 574. Section 13A-1-2(11), Ala. Code 1975, provides that a firearm is a deadly weapon. Finally, if the jury had determined that the appellant intended to kill McCombs, that intent could have properly been transferred to the victim.
 "Section 13A-5-40(a)(17), Ala. Code 1975, makes `murder in which the victim is killed while in a motor vehicle by a deadly weapon fired from outside that motor vehicle' a capital offense. It is undisputed that the victim here was not, at any relevant time, the occupant of a motor vehicle. In its order denying Jackson's motion to dismiss the indictment, the trial court first concluded that `the gravamen of [this offense] is that a defendant murder a victim while the victim is in a motor vehicle.' The court went on to hold, however, that the state would be required to prove only `that the Defendant killed someone with intent to cause the death of a person in a vehicle.'
". . . .
 "Jackson asserts that because Roberts was not in a vehicle when she was killed, Jackson cannot be prosecuted under § 13A-5-40(a)(17). The state argues, however, that because he intended to kill Prickett, who was in a vehicle, Jackson can be prosecuted for the capital offense of `murder in which the victim is killed while in a motor vehicle by a deadly weapon fired from outside that motor vehicle.' § 13A-5-40(a)(17).
 "The state argues that § 13A-5-40(a)(17) should be construed in pari materia with the remainder of the capital murder statute and that when it is so construed Jackson can be convicted of capital murder if the state proves that Jackson killed Roberts with the intent to kill Prickett.
"Section 13A-5-40(b) provides:
 "`Except as specifically provided to the contrary in the last part of subdivision (a)(13) of this section, the terms "murder" and "murder by the defendant" as used in this section to define capital offenses mean murder as defined in Section 13A-6-2(a)(1), but not as defined in Section 13A-6-2(a)(2) and
(3). . . ."
 "Section 13A-6-2(a)(1) provides that a person commits murder if `[w]ith intent to cause the death of another person, he causes the death of that person or of another person.'
 "The state argues that, pursuant to § 13A-5-40(b), a person commits capital murder if, with the intent to cause the death of another person, he causes the *Page 696 
death of that person or someone else and he does so pursuant to one of the aggravating factors set out in § 13A-5-40(a). By its language, § 13A-6-2(a)(1) clearly invokes the doctrine of transferred intent in defining the crime of murder. For example, if Defendant fires a gun with the intent to kill Smith but instead kills Jones, then Defendant is guilty of the intentional murder of Jones. The same analysis, however, does not apply to the factual circumstances that elevate the crime of murder (§ 13A-6-2(a)(1)) to capital murder (§ 13A-5-40).
 "Under the facts alleged in the indictment, Jackson's intent to kill Prickett can certainly be `transferred' to the conduct that actually resulted in the death of Roberts. However, Prickett's location (in a motor vehicle) cannot be `transferred' to Roberts so as to elevate the crime to capital murder.
 "First, the clear statutory language of § 13A-5-40(a)(17), considered together with § 13A-5-40(b) and § 13A-6-2(a)(1), does not yield that result. Section 13A-5-40(b) refers to § 13A-6-2(a)(1) for the definition of `murder'; and § 13A-6-2(a)(1) codifies the doctrine of transferred intent in that definition. However, § 13A-5-40(a)(17) makes a `murder' capital only when `the victim is killed while in a motor vehicle.' That is, that section defines a factual circumstance rather than merely a state of mind; and that factual circumstance is not present in this case. Prickett was not `killed' and Roberts was not `in a motor vehicle.'"
Ex parte Jackson, 614 So.2d 405, 406-07 (Ala. 1993). Thus, because the victim was in a vehicle when he was shot, the doctrine of transferred intent could have properly applied in this case.
Viewing the evidence in the light most favorable to the State, where was sufficient evidence from which the jury could have found the appellant guilty of capital murder. "When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit it to the jury, and, in such a case, this court will not disturb the trial court's decision." Ward v. State, 557 So.2d 848, 850 (Ala.Cr.App. 1990).
The appellant argues that his videotaped statement, which the State offered into evidence during its case-in-chief, showed that he did not intend to kill anyone. In his statement, the appellant claimed that he tried to scare McCombs, not kill him. Conflicting evidence of intent presents a question for the jury to resolve.Bartlett v. State, 701 So.2d 305 (Ala.Cr.App. 1997). Where the evidence presented raises questions of fact for the jury, "`[a]bsent clear and convincing evidence to the contrary, the jury's finding will not be reversed on appeal.'" Hoobler v.State, 668 So.2d 905, 906 (Ala.Cr.App. 1995), quoting Pugh v.State, 536 So.2d 99, 100 (Ala.Cr.App. 1986); see alsoPage v. State, 487 So.2d 999, 1007 (Ala.Cr.App. 1986) (finding that the question of intent is a question for the jury). Therefore, the trial court properly denied the appellant's motions for a judgment of acquittal.
 II.
The appellant asserts that the trial court improperly refused to give his requested jury instructions regarding provocation. He requested the following instructions:
 "If you are convinced beyond a reasonable doubt that Mr. Farrior committed a murder, [but that] he caused the death due to a sudden heat of passion caused by Ricardo McCombs trying to run over him with a car, before Mr. Farrior had a reasonable time for the passion to cool and for reason to reassert itself, then Mr. Farrior would be guilty of manslaughter."
 "The act of trying to run someone over with a car and kill them is a provocation recognized by the law. If you are satisfied from the evidence produced by the state beyond a reasonable doubt that Rondonaldrick Farrior caused the murder of Mr. Milton due to a sudden heat of passion brought on by Mr. McCombs trying to run him over with a car, and before a reasonable time for the passion to cool and for *Page 697 
reason to assert itself, then Rondonaldrick Farrior would be guilty of manslaughter."
(C.R. 327-28).
The trial court instructed the jury on "heat-of-passion" manslaughter as follows:
 "Now, the next lesser included offense that I want to charge you on is what we call intentional murder with provocation. A person commits — and what we have under this particular part of the law is that where a person intentionally takes another person's life but they do so because they were provoked into doing so, the law says that's not murder. But, its manslaughter. It doesn't excuse the act. It just reduces the level of criminal responsibility for it. So I don't want you to get thrown off by the definition of it.
 "So the ultimate offense under these circumstances is manslaughter if Mr. Farrior is guilty of this charge. So when I start out by saying the person commits the crime of manslaughter, you will know why I'm saying it. A person commits the crime of manslaughter if he causes the death of another person under circumstances that ordinarily would constitute murder, that means the intentional killing of somebody, except that he causes the death due to a sudden heat of passion caused by provocation recognized by law and before a reasonable time for the passion to cool and for reason to reassert itself.
 "To convict, the State must prove beyond a reasonable doubt each of the following elements of manslaughter. That Donald Milton is dead. That Rondonaldrick Farrior caused the death of Donald Milton by shooting him with a pistol. That in committing the act that caused the death of Mr. Milton, the defendant acted intentionally. And that in so acting the defendant, Mr. Farrior, was lawfully provoked to do the act which caused the death of the Mr. Milton by a sudden heat of passion before a reasonable time for the passion to cool and for reason to reassert itself."
(R. 626-28). The trial court charged the jury as follows concerning "provocation":
 "Now, a killing in sudden passion excited by sufficient lawful provocation, as I have said, is manslaughter. Not because the law supposes this passion made the defendant unconscious about what he was about to do and strip[ped] the act [of] killing of the intent to commit the killing. But it is because the law says passion disturbed the sway of the defendant's reasoning.
 "Let me say this. That mere words, no matter how insulting, never reduced murder to manslaughter. Such provocation can in no case be less than an assault either actually committed or threatened under such circumstances as would reasonably convince the mind that Mr. Farrior had reason for believing, and did believe, that he would be presently assaulted by Mr. McCombs, and that he struck back, not in consequence of a previously formed design, either general or specific, but he struck in consequence of a passion suddenly aroused by what was apparently about to happen to him at Mr. McCombs' hands.
 "In order to be legal provocation, the provoking act must have been of a nature calculated to influence the passion of the ordinary reasonable man.
 "So in this case if the state has proven the three elements that I have given to you, that Mr. Milton is dead, that Mr. Farrior caused Mr. Milton's death by shooting him with a pistol, that in causing the death of Mr. Milton the defendant acted with intent, shot him with the intent to cause his death or some other person's death, but if at the time the defendant did that, he was lawfully provoked to do that, then Mr. Farrior would be guilty of manslaughter, but he would not be guilty of murder.
 "The last offense that — and let me tell you this with regard to that charge, ladiesand gentlemen, that high temper, hot blood and passion arising from anger, hatred, jealousy, desire for revenge or other emotions will not excuse the commission of the crime. That's not the type of heat of passion . . . we are talking about."
(R. 628-29).
The trial court thoroughly covered provocation in its oral charge to the jury. The charge adequately and sufficiently covered the offense of heat-of-passion manslaughter, *Page 698 
clearly setting out the elements of the offense and adequately defining those elements. Sasser v. State, 494 So.2d 857, 860
(Ala.Cr.App. 1986).
 "`The refusal of a charge, though a correct statement of law, shall not be cause for reversal if it appears that the same rule of law was substantially and fairly given to the jury in the court's general charge or in charges given at the request of the parties.'
 "Ala. Code § 12-16-13 (1975). See also, Jackson v. State, 414 So.2d 1014 (Ala.Crim.App. 1982); Campbell v. State, 423 So.2d 284 (Ala.Crim.App. 1982); Williams v. State, 451 So.2d 411 (Ala.Crim.App. 1984)."
Id.
The state argued that the provocation was the fight at school on the previous day, and the defense argued that the provocation was McCombs' alleged attempt to run over the appellant with his vehicle.
 "As the commentary to § 13A-6-3, Code of Alabama
1975, indicates, `What constitutes adequate legal provocation is not defined but remains, as previously, for judicial interpretation. The trial court must, as a preliminary question, decide as a matter of law whether offered evidence of provocation has any tendency to prove mitigating circumstances; when so construed and admitted, the questions of sufficient provocation and cooling time are then solely for the jury.' This court has previously addressed this issue and held that `[w]hether heat of passion was sufficiently proven was for the jury to determine. Such has long been the law of this state. e.g. Ex parte Sloane, 95 Ala. 22, 11 So. 14 (1891).' Geter v. State, 468 So.2d 197, 198 (Ala.Cr.App. 1985)."
Cox v. State, 500 So.2d 1296, 1298 (Ala.Cr.App. 1986). The question of which act, if either, actually provoked the shooting was a question for the jury to decide. Likewise, if it decided that McCombs' alleged act of attempting to run over the appellant with his vehicle was the provocation, whether that act constituted a provocation recognized by law was also a question for the, jury to decide. In that regard, the trial court instructed the jury on provocation, heat-of-passion manslaughter, and the situations in which an assault may constitute legal provocation. During opening and closing arguments and throughout the trial, the defense repeatedly contended that McCombs provoked the shooting by attempting to run over the appellant with his vehicle. Questions concerning the credibility of witnesses and the weight to be given to their testimony are for the jury to decide. Zumbado v. State, 615 So.2d 1223 (Ala.Cr.App. 1993);Harris v. State, 513 So.2d 79 (Ala.Cr.App. 1987). The requested jury instructions invaded the province of the jury — i.e., specifically stating that "the act of trying to run someone over with a car and kill them is a provocation recognized by the law."See Jolly v. State, 395 So.2d 1135, 1144 (Ala.Cr.App. 1981) (holding that the trial court did not err in refusing to give a requested instruction that invaded the province of the jury). Furthermore, the trial court thoroughly instructed the jury concerning provocation, assault, and heat-of-passion manslaughter. Therefore, the trial court properly refused to give the requested instructions.
 III.
The appellant next contends that the prosecution used its peremptory challenges to remove 4 of the 13 blacks on his venire because of their race or gender, in violation of Batson v.Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), andJ.E.B. v. Alabama, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89
(1994). Therefore, he contends that the trial court improperly denied his Batson motion. In Merriweather v. State, 629 So.2d 77,88 (Ala.Cr.App. 1993), we held:
 "The trial court's ruling on a Batson motion will be reversed only if clearly erroneous. Nance v. State, 598 So.2d 30, 31 (Ala.Cr.App. 1992); Jackson v. State, 594 So.2d 1289, 1294 (Ala.Cr.App. 1991). `It is well settled that the ruling of the trial court on a Batson hearing is entitled to substantial deference and will not be disturbed on review unless it is "clearly erroneous."' Ex parte Bankhead, 625 So.2d 1146 (Ala. 1993)." *Page 699 
See also Bishop v. State, 690 So.2d 498 (Ala.Cr.App. 1995).
 "Batson, Ex parte Branch, 526 So.2d 609 (Ala. 1987), and their progeny make it very clear that `"[t]he burden of persuasion is initially on the party alleging discriminatory use of peremptory challenges to establish a prima facie case of discrimination."' Ex parte Bird, 594 So.2d 676, 679
(Ala. 1991) (quoting Ex parte Branch, 526 So.2d at 622). Until this burden is met, the challenged party `is under no obligation to offer explanations for its peremptory strikes.' Jackson v. State, 594 So.2d 1289, 1292 (Ala.Cr.App. 1991). See also Huntley v. State, 627 So.2d 1013 (Ala. 1992). Merely showing that the challenged party struck one or more members of a particular race is not, sufficient to establish a prima facie case. Harrell v. State, 571 So.2d 1270, 1271 (Ala. 1990), cert. denied, 499 U.S. 984, 111 S.Ct. 1641, 113 L.Ed.2d 736 (1991); Ashley v. State, 606 So.2d 187, 192 (Ala.Cr.App. 1992); Jones v. State, 603 So.2d 419, 420-21 (Ala.Cr.App. 1992). See also Hood v. State, 598 So.2d 1022, 1023 (Ala.Cr.App. 1991). "
Edwards v. State, 628 So.2d 1021, 1024 (Ala.Cr.App. 1993). In this case, as in Edwards, the appellant relied only on bare numbers to support his Batson motion. He made no attempt to undertake the analysis required by Ex parte Bird and Ex parteBranch. Therefore, he did not establish a prima facie case of discrimination and did not show that the trial court's denial of his motion was clearly erroneous.
 IV.
The appellant argues that the trial court erred in admitting his videotaped confessions into evidence. Specifically, he contends that officers offered him a hope of leniency, preyed upon his fears, and used his mother to prevail upon him emotionally to induce his confessions. "`Extrajudicial confessions are prima facie involuntary and inadmissible, and the burden is upon the state to show voluntariness and a Miranda
predicate in order for them to be admitted.'" Mitchell v. State,706 So.2d 787, 801 (Ala.Cr.App. 1997) (citations omitted).
 "The general rule is that for a confession to be admissible the state must show that the defendant was advised of his rights, as required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694
(1966), and its progeny, and that the defendant gave the statement after making a voluntary and knowing waiver of those rights. Bush v. State, 523 So.2d 538
(Ala.Cr.App. 1988); Magwood v. State, 494 So.2d 124
(Ala.Cr.App. 1985), aff'd, 494 So.2d 154 (Ala. 1986), cert. denied, 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 599 (1986)."
Robinson v. State, 698 So.2d 1160, 1162 (Ala.Cr.App. 1996), cert. denied, 698 So.2d 1165 (Ala. 1997). "`Whether a waiver is voluntarily, knowingly, and intelligently made depends upon the particular underlying facts and circumstances of each case, including the background, experience, and conduct of the accused.'" Langley v. State, 641 So.2d 339, 340 (Ala.Cr.App. 1994) (citations omitted).
 "`"`(1) The test for voluntariness involves a consideration of the totality of the circumstances. (2) "The admissibility of confessions is for the court, their credibility is for the jury." (3) Where the voluntariness inquiry presents conflicting evidence and the trial judge finds that the confession was voluntarily made, great weight must be given his judgment. "(W)here there is a genuine conflict of evidence great reliance must be placed upon the finder of fact." (4) This finding will not be disturbed on appeal unless the appellate court is convinced that the conclusion is palpably contrary to the great weight of the evidence and manifestly wrong. (5) Even where there is credible testimony to the contrary, if the evidence is fairly capable of supporting the inference that the rules of freedom and voluntariness were observed, the ruling of the trial court need only be supported by substantial evidence and not to a moral certainty. "Review of the court's action is limited to determining whether its finding was clearly erroneous."'"'"
Fox v. State, 659 So.2d 210, 214-15 (Ala.Cr.App. 1994) (citations omitted), quoting Whittle v. State, 518 So.2d 793, 796
(Ala.Cr.App. 1987). *Page 700 
When he made his statements, the appellant was 18 years old and was in the 11th grade. At 2:25 p.m., he signed a waiver of hisMiranda rights, specifically acknowledging that he had not been promised anything in return for making a statement and that he had not been pressured by anyone. He gave his first videotaped confession at 3:51 p.m. At approximately 6:10 p.m., after his mother arrived and after he signed another waiver of his Miranda
rights, he gave a second videotaped statement in which he retracted portions of his earlier statement. The most significant difference between the two statements was that, in the first statement, the appellant stated he was the only person firing shots at McCombs' car and, in the second statement, he said that another man also shot at McCombs' car.
The testimony at the suppression hearing refutes the appellant's claim that he made his statement involuntarily. There was testimony that the officers gave the appellant food and water when he requested it. See Battle v. State, 645 So.2d 344
(Ala.Cr.App. 1994) (finding that the fact that the appellant was not given anything to eat or drink did not render his confession involuntary where there was no evidence that the appellant was denied or deprived of food or water). Although the appellant testified that he was afraid of Officer Marshall because Marshall had a reputation on the streets for getting "down to business," he also testified that he was "afraid from the get-go" because of his situation. (R. 88). Furthermore, the appellant did not see Marshall until after he made his first statement. And, there was no evidence that the officers improperly offered the appellant any hope of leniency or reward to induce him to confess.
Finally, there is no evidence that the police intimidated the appellant's mother so that she would induce him to confess. "[A] confession, or an inculpatory statement, is involuntary if it is either coerced through force or induced through an express or implied promise of leniency" McLeod v. State, 718 So.2d 727 (Ala. 1998) However, "`coercive police activity is a necessary predicate to the finding that a confession is not "voluntary" within the meaning of the Due Process Clause of the Fourteenth Amendment.'" Rutledge v. State, 651 So.2d 1141, 1145
(Ala.Cr.App. 1994), quoting Colorado v. Connelly, 479 U.S. 157, 167,107 S.Ct. 515, 522, 93 L.Ed.2d 473 (1986) (emphasis added inRutledge). When his mother arrived at the police station, officers told her that her son was charged with capital murder. After he gave his first statement, the appellant met with his mother. She told him, in the presence of at least one police officer, that she had seen the other shooter and that he did not need to lie to protect anyone else. At no time did the officers encourage his mother to persuade her son to confess. Subsequently, the appellant made a second statement. Only after the appellant made that second statement did Officer Marshall tell the appellant's mother it might be better for the appellant if they could get the other man involved in the shooting. Furthermore, during his second confession, the following occurred:
 "[Officer Cunningham]: Did anybody force you into going back in and retracting your statement?
"[Appellant]: No.
"[Officer Cunningham]: Anybody tell you to do that?
 "[Appellant]: Well I talked, I talked with my mama and nobody can't tell me to do nothing. I did it on my own"
(Supp. R. 25-26) (emphasis added).
An examination of the totality of the circumstances in this case supports the trial court's determination that the appellant made his statements voluntarily. There is no indication that his will was overborne by the officers. McLeod, supra. Thus, the trial court did not abuse its discretion in admitting the appellant's videotaped statements into evidence.
The appellant argues that § 13A-5-40(a)(17), Ala. Code 1975, is unconstitutional. He first argues that § 13A-5-40(a)(17) violates the Equal Protection Clause of the Fourteenth Amendment, and he urges us to reconsider our decision in May v. State
upholding the statute against *Page 701 
an equal protection challenge. 710 So.2d 1362 (Ala.Cr.App. 1997). In May, we stated:
 "`"The essence of the theory of equal protection of the laws is that all similarly situated are treated alike." . . . Equal protection of the laws does not compel uniformity in the face of difference. The Equal Protection Clause does not mean that a state may not draw lines that treat one class of individuals differently than the others. The test is whether the difference in treatment is an invidious discrimination. Classification of subjects in a statute is not arbitrary and invalid if based on some difference which bears a reasonable and just relation to the attempted classification.'"
710 So.2d at 1364-65, quoting State v. Spurlock, 393 So.2d 1052,1056 (Ala.Cr.App. 1981) (citations omitted)
 "`"The Equal Protection Clause of the Fourteenth Amendment goes no further than to prohibit invidious discrimination. . . . If there is some reasonable basis for the recognition of separate classes, and if the disparate treatment of the classes has a rational relation to the object sought to be achieved by the lawmakers, the Constitution is not offended. The transgression arises only when the classification rests upon grounds wholly irrelevant to achievement of the state's objective; the separate treatment must admit of but one conclusion beyond a rational doubt, i.e., that the basis therefore is arbitrary and unreasonable and without relevance to the legislative goal."'"
710 So.2d at 1365 (citations omitted). The appellant contends that § 13A-5-40(a)(17) implicates his fundamental right to be free from cruel and unusual punishment. Therefore, he argues that we should apply the strict scrutiny test, rather than the rational basis test, to determine whether § 13A-5-40(a)(17) violates his equal protection rights. This argument is without merit. Section 13A-5-40(a)(17) does not implicate any of the appellant's fundamental rights. As we stated in May, the intentional murder of a person in a vehicle is the act sought to be prohibited by § 13A-5-40(a)(17). Id. And, "`murder is not a constitutionally protected activity.'" Id., quoting Ex parteWoodard, 631 So.2d 1065, 1068 (Ala.Cr.App. 1993), cert. denied,662 So.2d 929 (Ala.), cert. denied, 513 U.S. 869, 115 S.Ct. 190,130 L.Ed.2d 123 (1994).
 "`"Because the statute does not proscribe activities that are legally protected and does not involve a legally cognizable `suspect' class, `the classification must be upheld if "any state of facts rationally justifying it is demonstrated to or perceived by the court."'"'"
Woodard, 631 So.2d at 1073 (emphasis added). As we held in May, "the classification by the legislature of the killer of a person in a vehicle as one guilty of a capital offense has a rational basis." 710 So.2d at 1365. The facts in this case demonstrate one situation the legislature sought to address by enacting the statute. The appellant fired at McCombs' car several times. There were four people in the car, including two very young children. Another car driven by Nicole Jackson, who had her baby in the car, was nearby. Because of the mobile nature of a vehicle, there is an increased risk of harm to the driver, passenger, pedestrians, bystanders, and people in other vehicles if a person fires into a vehicle with a deadly weapon. Furthermore, the recent increase in drive-by shootings, carjackings, and other random acts of violence involving vehicles could have led the legislature to enact the statute. There are several fact situations that would serve as rational reasons for classifying this type of intentional murder as capital murder. Accordingly, as we held in May, § 13A-5-40(a)(17) does not violate the appellant's equal protection rights.
The appellant also argues that § 13A-5-40(a)(17) is unconstitutional because it mandates a cruel and unusual sentence of death or life imprisonment without the possibility of parole. He contends that the legislature placed a "disproportionate emphasis on the location of the victim as the sole criteria for the sentence of death or life without parole." (Appellant's Brief at p. 23). Essentially, the appellant argues that there is no rational basis for distinguishing an intentional killing of a person who is inside a vehicle from an intentional killing of a person who is not inside a vehicle. For the reasons stated *Page 702 
above, we adhere to our holding in May that the statute is constitutional and properly elevates the murder of a person in a vehicle through the use of a deadly weapon to a capital offense.
Furthermore, the sentencing procedure for a person convicted of violating § 13A-5-40(a)(17), Ala. Code 1975, is constitutionally sound.
 "`A capital sentencing scheme must . . . provide a "`meaningful basis for distinguishing the few cases in which [the death penalty] is in imposed from the many cases in which it is not.'" [Gregg v. Georgia, 428 U.S. 153, 188, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859 (1976)], quoting Furman v. Georgia, [408 U.S. 238, 313, 92 S.Ct. 2726, 2763, 33 L.Ed.2d 346
(1972)] (White, J., concurring).
 "`This means that if a State wishes to authorize capital punishment it has a constitutional responsibility to tailor and apply its law in a manner that avoids the arbitrary and capricious infliction of the death penalty.'
 "Godfrey v. Georgia, 446 U.S. 420, 427-428, 100 S.Ct. 1759, 1764, 61 L.Ed.2d 398, 406 (1980)."
Woodard, 631 So.2d at 1069.
 "Although the appellant argues that this statute violates the Eighth Amendment's ban on cruel and unusual punishment because the punishment is disproportionate to the crime, the United States Supreme Court has indicated that the death penalty is not cruel and unusual in all murder cases. Pulley v. Harris, 465 So.2d [U.S.] 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). Moreover, the Court has indicated that the death penalty is a constitutional punishment for intentional murder. Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)."
Hadley v. State, 575 So.2d 145, 152 (Ala.Cr.App. 1990). Not every death of a victim in a vehicle will constitute capital murder. Section 13A-5-40(a)(17) requires that, to constitute a capital offense, the murder must be intentional. Therefore, the statute is not inconsistent with the United States Supreme Court's holding in Enmund v. Florida, 458 U.S. 782,102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). In addition, a conviction under this statute does not automatically result in a mandatory death sentence. Instead "`[u]pon conviction of a defendant for a capital offense, the trial court [conducts] a separate sentence hearing to determine whether the defendant shall be sentenced to life imprisonment without parole or to death.'" Hadley, 575 So.2d at 152, quoting § 13A-5-45(a), Ala. Code 1975.
 "`[T]he [United States Supreme] Court has imposed two general requirements on the capital sentencing process. First, a state must channel the sentencer's discretion in order to "genuinely narrow the class of persons eligible for the death penalty and . . . [thus] reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." Second, the state may not limit the sentencer's consideration of any relevant evidence that might lead the sentencer to decline to impose the death penalty.
 "`The required narrowing of the class of death-eligible defendants may occur at either the guilt or the sentencing phase of a capital trial. When narrowing is accomplished during the sentencing phase, the sentencer determines whether certain characteristics of the crime, known as aggravating circumstances, distinguish the gravity of the offense so as to justify the imposition of the death penalty.'"
Woodard, 631 So.2d at 1070 (citations omitted).
 "Under our current statutory scheme, a `capital offense' is `[a]n offense for which a defendant shall be punished by a sentence of death or life imprisonment without parole according to the provisions of . . . [A]rticle [2 of Chapter 5 of Title 13A].' § 13A-5-39(1) (emphasis added [in Woodard]). The specific forms of conduct that the legislature has declared to be `capital offenses' are set forth in § 13A-5-40 (Supp. 1993). Each of these offenses consists *Page 703 
of an intentional murder coupled with some other element."
Id.
 "[T]he legislature has clearly classified certain crimes as `capital offenses,' § 13A-5-40, and it has set the minimum punishment for such crimes as imprisonment for life without parole, see §§ 13A-5-45(f); 13A-5-46(e)(1). This is no different from the legislature's classifying other offenses for purposes of punishment and establishing minimum and maximum punishments for each classification. See §§ 13A-5-3; 13A-5-6; 13A-5-7. A greater punishment — death — may be imposed on a defendant convicted of a capital offense, but only if one or more or the aggravating circumstances enumerated in § 13A-5-49 is found to exist and that aggravating circumstance(s) outweighs any mitigating circumstance(s) that may exist."
 ". . . `[T]he defendant does not become death eligible until the State proves an aggravating circumstance in the punishment phase."
631 So.2d at 1071 (emphasis in original). Thus, for a defendant to be sentenced to death upon conviction for violating §13A-5-40(a)(17), the defendant must be guilty of the intentional
murder committed through the use of a deadly weapon while the victim is in a vehicle "and the sentencer must find the existence of at least one of the aggravating circumstances enumerated in § 13A-5-49, thereby narrowing the class of death-eligible' defendants." Woodard, 631 So.2d at 1070.
 "`[W]hen, in the opinion of the legislature, a class of victims require[s] special protection and the statutory scheme provides a meaningful method of narrowing the class of defendants who are death eligible, the statute is not constitutionally infirm.'"
Woodard, 631, So.2d at 1072 (citation omitted). Alabama's capital, sentencing scheme delineates a precise procedure to determine whether a defendant convicted under this statute will be sentenced to death or to life imprisonment without the possibility of parole. Furthermore, it narrows the class of "death-eligible" defendants. Accordingly, the procedure for sentencing a person convicted of violating § 13A-5-40(a)(17) withstands the appellant's challenges.
 VI.
Finally, the appellant argues that § 13A-5-49(3), Ala. Code 1975, is void for vagueness. Section 13A-5-49(3) provides that the fact that "[t]he defendant knowingly created a great risk of death to many persons" may be considered an aggravating circumstance for death-penalty eligibility. However, his argument is moot because the trial court did not impose the death penalty.Jones v. State, 672 So.2d 1366, 1371 (Ala.Cr.App. 1995). Therefore, error, if any, in the trial court's finding that this aggravating circumstance existed was harmless. Flowers v. State,586 So.2d 978, 990 (Ala.Cr.App.), cert. denied, 596 So.2d 954
(Ala. 1991), cert. denied, 504 U.S. 930, 112 S.Ct. 1995,118 L.Ed.2d 591 (1992).
Based on the foregoing, we affirm the judgment of the trial court.
AFFIRMED.
LONG, P.J., and McMILLAN, COBB, and BROWN, JJ., concur.